UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HAROLD JOHNSON, SR.,            :    **CIVIL NO. 1:03-CV-2087**
                                :
            Plaintiff           :    (Judge Conner)
                                :
        v.                      :    (Magistrate Judge Smyser)
                                :
JULIA K. HEARTHWAY,             :
MICHELE L. KONDRAD,             :
DENNIS A. KISTLER,              :
                                :
            Defendants          :

### REPORT AND RECOMMENDATION

The defendants' motion for summary judgment is fully briefed and is ripe for decision by the court.  This report and recommendation addresses the defendants' motion for summary judgment.

The plaintiff commenced this 42 U.S.C. § 1983 action by filing a complaint on November 19, 2003.

The plaintiff alleges the following facts in his complaint.

The plaintiff is an investigator/supervisor with the Pennsylvania Attorney General's Office with more than ten years of service in that office. *Complaint at ¶6.* The defendants are attorneys with the Attorney General's Office. *Id. at ¶7.*

At various times from 1997 to the present the plaintiff has spoken out about various practices at the Attorney General's Office including improper hiring practices, improper allocation of funds, improper political activities, unethical practices and improper closing of criminal complaints for political purposes. *Id. at ¶¶1, 12 & 16.* The defendants have acted to prevent the plaintiff from speaking out on matters of public concern. *Id. at ¶15.* Because he spoke out on matters of public concern, the plaintiff is being retaliated against by being subjected to a pattern of demeaning harassment designed to terminate his employment. *Id. at ¶1.* More specifically, the plaintiff alleges that the defendants have conspired to put together false and damaging information about him in order to impede his effectiveness as a supervisor and set him up for dismissal; that he has received a negative performance review and a change in reviewer (from out of his supervisory channels); that he has been investigated as a means of

destroying his credibility and in an effort to intimidate him; and that he has been threatened numerous times. *Id. at ¶¶10 & 13, 14 & 21.* The plaintiff alleges that the defendants know that a seriously deficient employee performance review can and will form the basis of a demotion or dismissal and that such a review will preclude him from being employed elsewhere. *Id. at ¶22.*

The plaintiff alleges that he has suffered continuously since 1997 simply because he spoke out against improper activities in the Attorney General's Office. *Id. at ¶10.* He alleges that because of the persistent retaliatory actions taken against him by the defendants he has suffered health-threatening anxiety and he needs professional psychiatric counseling. *Id. at ¶¶ 11 & 14.*

On January 20, 2004, the defendants filed a motion to dismiss the complaint or, in the alternative, for a more definite statement. That motion, after full briefing and a magistrate judge's report and recommendation, was denied by Order of May 18, 2004.

The plaintiff's claim is a First Amendment retaliation claim.   We will at the outset review the applicable legal principles.

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). Public employers cannot silence their employees simply because they disapprove of the content of their speech. *Id.* at 194. On the other hand, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

A public employee's claim of retaliation is evaluated under a three-step process.  *Green v. Phila. Hous. Auth.,* 105 F.3d 882, 885 (3d Cir. 1997).  First, the plaintiff must establish that the activity in question was protected. *Id.*

Second, the plaintiff must establish that the protected activity was a substantial or motivating factor in the alleged retaliatory action.  *Pro v. Donatucci*, 81 F.3d 1283, 1288 (3d Cir. 1996).  Lastly, the public employer can rebut the claim by demonstrating that it would have reached the same decision even in the absence of the protected conduct. *Baldassare, supra,* 250 F.3d at 195.

"A public employer 'adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall, and hiring, based on the exercise of an employee's First Amendment rights.'" *Brennan,* 350 F.3d at 419 (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir. 2000)). "On the other hand, courts have declined to find that an employer's actions have adversely affected an employee's exercise of his First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.*

Retaliation is actionable because retaliatory actions may tend to chill an individual's exercise of constitutional

rights. *ACLU of Maryland v. Wicomico County*, 999 F.2d 780,
785 (4th Cir. 1993). Some showing of injury, more than a *de
minimis* injury, is required in a retaliation claim. *Suppan v.
Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)("Yet even in the
field of constitutional torts *de minimis non curat lex*.").
The effect of retaliation on constitutional rights need not
be great to be actionable. *Id*.  ("The effect on freedom of
speech may be small, but since there is no justification for
harassing people for exercising their constitutional rights
it need not be great in order to be actionable."). "[A]n
employment action is considered adverse, for the purposes of
determining unlawful retaliation, if it is likely to chill 'a
person of ordinary firmness' in the exercise of their First
Amendment rights." *Marrero v. Camden County Bd. of Soc.
Servs.,* 164 F.Supp. 2d 455, 467 (D.N.J. 2001)(quoting *Suppan,
supra,* 203 F.3d at 235).

      The principles relating to summary judgment will also
be reviewed at the outset.

      Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there
is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."
Fed.R. Civ.P. 56(c).  The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The
moving party may discharge that burden by "'showing'-- that
is, pointing out to the district court -- that there is an
absence of evidence to support the nonmoving party's case."
*Id.* at 325.  Once the moving party has met its burden, the
nonmoving party may not rest upon the mere allegations or
denials of its pleading; rather, the nonmoving party must
"set forth specific facts showing that there is a genuine
issue for trial."  Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable
jury, considering the evidence presented, could find for the
non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94
(3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 249 (1986)).  A material factual dispute is a
dispute as to a factual issue that will affect the outcome of
the trial under governing law.  *Anderson*, *supra*, 477 U.S. at
248.  In determining whether an issue of material fact
exists, the court must consider all evidence in the light

most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

The Middle District Local Rule 56.1 is important to note.  It provides:

> Upon any motion for summary judgment pursuant to Fed.R.Civ.P. 56, there shall be filed with the motion a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the

foregoing paragraph, as to which it is
contended that there exists a genuine issue
to be tried.
     Statements of material facts in support,
or in opposition to, a motion shall include
references to the parts of the record that
support the statements.
     All material facts set forth in the
statement required to be served by the moving
party will be deemed to be admitted unless
controverted by the statement required to be
served by the opposing party.

In finding the following to be the undisputed

material facts, we have restated the moving parties'

(defendants') LR 56.1 statement when unopposed.  When there

is opposition to the defendants' stated fact, we have first

considered the defendants' LR 56.1 statement and cited

evidentiary sources supporting it, then the plaintiff's

responsive LR 56.1 statement and cited supporting evidentiary

sources, and then whether as to each particular material

inference whether by application of the Federal Rules of

Evidence there is admissible evidence cited that would

support the proffered inference.  By application of this

analytical process, it is undisputed that plaintiff Harold

Johnson, Sr. (Johnson) has been an employee of the

Pennsylvania Office of Attorney General (OAG) for more than

ten years and has supervisory responsibility.  Defendant

Julia Hearthway (Hearthway) has been employed by the OAG for

approximately eleven years and, since approximately March of

2000 has been Chief Deputy Attorney General of the Insurance Fraud Section of the OAG.

Dennis Kistler is a Senior Deputy Attorney General with the Insurance Fraud Section of the OAG.  Michele Santicola (formerly Michele Kondrad) was a Deputy Attorney General in the Insurance Fraud Section of the OAG from 1999 until September 8, 2004.  Both Kistler and Santicola worked in the Western Regional Office of the Insurance Fraud Section.  Scott Robinette is a third attorney in the Western Regional Office of the Insurance Fraud Section.

Johnson asserts in his complaint that he "has suffered continuously since 1997" because of his performance of his duty and because he spoke out on improper activities in the OAG.  In 2002, Johnson received a performance evaluation report signed by Philip A. Checchia, defendant Hearthway, and David Kwait.  That performance evaluation had been prepared by defendant Hearthway.  Hearthway had taken over the primary responsibility for the preparation of performance evaluations after Agent Kirby Conrad had left the section in the Spring of 2001.  In addition to Johnson's performance evaluation report, Hearthway had prepared performance evaluations for three Special IIIs, Frank Ansel

in the Eastern Region, and Robert Soop and Craig LeCadre in the Central Region, each of whom at the time worked for the Insurance Fraud Section.   In the 2002 performance evaluation, Johnson received ratings of excellent in four categories and ratings of very good in six categories. Overall, he was rated very good.

On August 21, 2003, Hearthway solicited input from Kistler, Santicola, and Robinette to help her prepare the 2003 performance evaluation of Johnson.

In an August 21, 2003 e-mail from defendant Julia K. Hearthway to defendant Dennis A. Kistler, defendant Michele L. Kondrad and Scott Robinette, Hearthway stated:

> I am currently preparing Harold's
> evaluation for the period 7/01 to 7/02.  I
> have already received a good deal of input
> from each of you regarding the specific issue
> of Harry.  Before I complete this, I wanted
> to ask again your thoughts on the issue of
> Harold's performance and any specific
> instances that you feel should be brought to
> my attention.  The specific categories he is
> to be evaluated on are as follows:
>
> Quality of Work
> Work Habits
> Relationship with People
> Dependability
> Quantity of Work
> Initiative
> Analytical Ability
> Ability as Supervisor

Administrative Ability Safety

You did this for me a couple of years ago and
the reports were glowing.

I need to ask your input for this past year.

Thanks.
Julia

Santicola responded to Hearthway's request on
August 22, 2003.  Kistler responded to Hearthway's request on
August 25, 2003.  Robinette responded to Hearthway's request
on August 27, 2003.  Johnson's 2003 performance evaluation,
which was on a slightly different form from the prior years'
performance evaluation, ranked Johnson excellent in three
categories, very good in four categories, good in one
category, and fair in three categories.  Overall, Johnson's
performance was rated as good.  Hearthway prepared this
evaluation.  This evaluation is the only one about which
Johnson complains in his complaint.

The performance evaluation Johnson received in 2003
reduced his rating in the category of quality of work from
excellent to very good.  Hearthway made this change because
Johnson had failed to interview key witnesses in a timely
manner in two separate cases and because he had admitted
signing off on agent reports without reading those reports.

Many of those reports were substandard and should have been corrected.[1]   In the category of relationship with people, Johnson's rating was reduced from very good to good. Hearthway's reasons for doing so included her perception that Johnson had failed to follow her directions as to the preparation of agent performance evaluations even though he said he understood her directions and would comply.   Rather than trying to resolve the issue through discussion, Hearthway felt, Johnson had simply refused to comply with her directions.   Hearthway also felt that when she attempted to talk to Johnson about a problem, he would not take responsibility for that problem and instead blamed others. She also felt that Johnson preferred spending time covering himself instead of solving problems.

---

[1]Where no summary judgment evidentiary basis is cited by the plaintiff for factual assertions made in his Counter Statement of Material Facts, the court must take the well-supported material factual assertion of the moving party as established for Rule 56 purposes.  LR 56.1.   In citing evidence that purportedly shows the existence of a genuine dispute as to material issues of fact, the plaintiff cites documentary evidentiary sources that are not grounded in the summary judgment evidence by affidavits or otherwise.  Then, factual assertions are made by counsel in the plaintiff's counter statement of material facts with no references to evidence at all.

For example, the plaintiff implies that the court should afford evidentiary weight to and draw (unspecified) Rule 56 inferences from factual assertions contained in memoranda or notes prepared by plaintiff Johnson in October of 2003 (Doc. 32, P-6) and September of 2003 (Doc. 32, P-7).  But these documents are not Rule 56(f) affidavits nor are they documents referred to in Rule 56(f) affidavits.  The earlier recorded statements of the plaintiff, moreover, are not argued as admissible non-hearsay statements under Rule 801(d) of the Federal Rules of Evidence and are not argued as Rule 803 hearsay exceptions.

In the category of quantity of work, Johnson's evaluative rating was reduced from the highest category of very good to the lowest category of very good.  Hearthway did so because of the problem with Johnson reading and correcting agent reports.  In the category of initiative, Johnson's evaluative rating was reduced from very good to fair and, in the category of analytical ability, it was reduced from the highest category of very good to the middle category of very good.  In the category of administrative ability, Johnson's rating was reduced from very good to fair.  Hearthway changed this rating because of his manner of preparation of agent performance evaluations, his inability to improve the productivity and skills of agents, his failure to keep track of and enforce deadlines, and the *Tunstall* incident. [The "*Tunstall* incident" is a reference to events occurring during and after a trial.][2]

Johnson believes that Hearthway retaliated against him by lowering his performance evaluation because he spoke out with respect to her "improper activities."  The matters as to which Johnson claims that he spoke out were that two

---

[2]Defendant Hearthway has stated in her affidavit the reasons for these lower evaluations.  The plaintiff asserts that these were not her actual reasons.  The assertion that these were not the actual reasons is not evidence.

investigations, the *DeRusso* case and the *Kelly Chevrolet* case, were inappropriately closed.

The *Kelly Chevrolet* case was closed in January of 2003. Hearthway did not know that Johnson had an interest in the *Kelly Chevrolet* case or that he had any problem with the closure of the case until after Johnson's performance evaluation had been given to him. Johnson had not made any comments about the closing of the *Kelly Chevrolet* case to Hearthway. Hearthway did not have any knowledge that Johnson had any involvement in the *Kelly Chevrolet* case.

The *DeRusso* case was closed in January of 2002. Johnson had discussed the closure of the *DeRusso* case with Hearthway on January 23, 2002.

Johnson claims in his complaint that Hearthway attacked Johnson "on his employee methodology for those he supervises, and became very upset because Johnson was proven to be correct" and that he was made to go to a coaching session with the personnel office to train him on how to conduct performance reviews. But Johnson admits that he requested training in the proper method of conducting agent performance evaluations and that he believed the disagreement

with Hearthway over performance evaluation methodology to be
a cordial one.

     In his complaint, Johnson claims that he complained
that the Attorney General's Office was being used
inappropriately for campaign purposes by defendant Kistler.
Johnson believes that defendant Kistler retaliated against
him because he brought to Kistler's attention "some concerns"
both he and another agent had about Kistler's work on the
political campaign of Kistler's wife.  The summary judgment
evidence is that Johnson said to Kistler that "Agent
Krakovsky was not happy with the way things were going with
him [Krakovsky] in regard to the *Tunstall* trial and that
Krakovsky wanted Johnson to tell Kistler that Krakovsky was
going to file a complaint with the ethics board that Kistler
was using his office to run his wife's campaign."  The
summary judgment evidence is that, other than relaying
Krakovsky's threat, Johnson said nothing about the subject to
Kistler.[3]

---

[3]The plaintiff cites to his deposition, adding facts to demonstrate context in his Counter Statement. The plaintiff could have submitted an affidavit, but did not.  The construction urged by the plaintiff for the deposition answers is not warranted, and we do not find it to show a genuine dispute as to the defendants' assertion of undisputed facts.  In particular, the defendants' undisputed fact is that all that was said about "the subject" was the relay of Krakovsky's threat.  The "subject" was Kistler using his office to run his wife's campaign.  Johnson, who is not the party opponent as to his own deposition, could have countered such an inference by affidavit, but instead cites unclear portions of his own deposition ostensibly not addressing this same "subject."

No defendant had any involvement with any "off the books" investigations of Johnson mentioned in ¶ 2 of his complaint, or with any "authorized" investigation of Johnson. Defendant Hearthway did not verbally threaten Johnson and did not threaten Johnson in writing.  The only threat that Johnson claims that Santicola made to him was that she "presented lies in support and lies of information that she used against" Johnson in his evaluation.   The only threat that Johnson claims that Kistler made to him was the alleged threat embodied by the e-mail Kistler sent to Hearthway when she sought input for her performance evaluation.  Santicola did not say anything to Johnson that Johnson perceived as a threat, and did not send a written communication that Johnson considered to be a threat.  Defendant Kistler did not say anything to Johnson that Johnson considered to be a threat and did not send a written communication to Johnson that Johnson considered to be a threat.

Johnson claims the 2003 performance evaluation was "career altering," but has not articulated any way in which his career was altered by the 2003 performance evaluation. He claims that the defendants conspired to put together false

_____

and damaging information about him, but the evidence
identified by Johnson of a conspiracy is defendant
Hearthway's e-mailed request for input to be used in
preparation of Johnson's performance evaluation and the e-
mail responses from Kistler and Santicola.

The defendants' statements of undisputed material
facts are based upon cited documents.  The plaintiff's
denials are not accompanied by any references to sources.
The defendants have presented a defendant-by-defendant
structured summary judgment argument demonstrating that as to
each defendant there is at least one element of the
plaintiff's claim as to which there is not a genuine dispute
as to a material factual issue and as to which element of the
claim the defendants are entitled to judgment as a matter of
law.  The plaintiff does not respond to the structured and
principled summary judgment argument of the defendants, but
rather presents an argument comprised in large part of
factual assertions without reference to evidentiary support
or source.  Even in the relatively few instances where
summary judgment materials are referenced by the plaintiff,
the references are general and there is no effort made to
make a showing of the actual and precise evidentiary basis

and inference or chain of inferences for the assertion of facts in the summary judgment brief in opposition.

Defendant Hearthway's argument for summary judgment is that there is not a genuine issue of fact, in that there is not evidence to support a reasonable inference, that the plaintiff's expressions of criticism over the closing of the *DeRusso* and the *Kelly Chevrolet* cases was a substantial or motivating factor in the preparation by defendant Hearthway of a lower 2003 performance evaluation of plaintiff Johnson.

We have agreed with the defendants that, by application of principles under Rule 56 of the Federal Rules of Civil Procedure and LR 56.1, it is undisputed that Hearthway did not know that Johnson had concerns about the *Kelly Chevrolet* case.

We also agree with defendant Hearthway that a basis for a reasonable inference is not presented in the summary judgment evidence that the 2003 performance evaluation was lower than the 2002 performance evaluation because of an investigation (*DeRusso*) that was closed before the 2002 performance evaluation.  Johnson's criticisms about case closings preceded the 2002 performance evaluation.  A year

and a half had passed between Johnson's criticisms and the lower performance evaluation ratings.  The plaintiff does not in his brief point to evidence of relatedness as between a January 2002 conversation about the closing of an investigation and a performance evaluation rating in August of 2003 such as to support a reasonable inference that the January 2002 Johnson statements were a substantial motivating factor for the drop in performance ratings.  It is again noted that the plaintiff's brief fails to draw the necessary distinction for purposes of a summary judgment motion between inferences from evidence and unsupported and argumentative conclusions and assertions.

     In the case of the plaintiff's claim against defendant Kistler, the defendants' summary judgment argument is based upon the undisputed fact that the totality of what Johnson said to Kistler about work performed by Kistler on the political campaign of Kistler's wife was that Agent Krakovsky was not happy with the way that things were going with him in regard to the *Tunstall* trial and that Krakovsky wanted Johnson to tell Kistler that Krakovsky was going to file a complaint with the ethics board that Kistler was using his office to run his wife's campaign.  The defendants' argument goes on to cite the undisputed fact that other than

relaying Krakovsky's threat, Johnson said nothing to Kistler about the subject.  On the basis of the fact that Johnson acted only to relay to defendant Kistler the fact and substance of a statement made by another person, the defendant argues that there is not a basis for a reasonable inference that Johnson in this instance and context on a matter of public concern.

The plaintiff argues in opposition that an inference is to be drawn that Kistler felt anger towards Johnson.  The plaintiff does not address the defendant's argument that in relaying another speaker's message to Kistler, Johnson was not speaking on a matter of public concern.  We agree with defendant Kistler that there is not evidence to support a reasonable inference that he retaliated against plaintiff Johnson for speaking on a matter of public concern in that there is not evidence that Johnson was a speaker as to the message relayed by Johnson to Kistler.

The summary judgment basis advanced by defendant Santicola is that defendant Santicola's conduct did not constitute speaking out on a matter of public concern because it was not speech in the form of a complaint or in the form of an expression of concern.  Johnson's statements that are

the focus of the First Amendment retaliation claim as to defendant Santicola were in the form of questions to trial witnesses asking how they viewed the process of being a witness for the Commonwealth" and "if they had any suggestions they wanted to share."

The plaintiff argues that the court has already held that the matters Johnson alleges to have spoken out about are matters of public concern.  This is incorrect.  The court ruled that the complaint did not fail to state a claim upon which relief can be granted.  The court did not address particular statements in particular factual contexts.  Other than this argument, the plaintiff's brief in opposition to the motion as to defendant Santicola makes numerous factual assertions with no references to summary judgment evidence. There is no meeting in the plaintiff's brief of the defendants' argument that there is not evidence of the plaintiff speaking out on a matter of public concern.  The plaintiff has argued:

> As to Kondrad (Santicola) she had earlier been a fan of Johnson's and had gone out of her way to praise him.  See CMF paragraphs 55-58.  And see paragraphs 59, and 60-63 and the exhibits in support.  Kondrad was doing Hearthway's bidding.  Johnson was victimized after filing his complaint in this matter to an even greater extent than before the 2003 evaluation.  He only received the

> 2004 evaluation last fall and he is still
> suffering the "overtime review."  These
> defendants appear committed to Johnson's
> demise and they have virtually no concern
> over treating him adversely in the face of
> existing litigation.  Thus plaintiff argues
> that he clearly spoke out on matters of
> public concern.  Under the rule laid down in
> *Pickering v. Board of Education*, 391 U.S. 563
> (1968) a balancing test is applied to the
> interest a public employer has in limiting
> protected speech in the workplace.  Here
> there is no employer interest and none is
> claimed.  Under *Green v. Phila. Hous. Auth.*,
> 105 F.3d 882 (3d Cir. 1997), Mr. Johnson must
> demonstrate that the speech or activity
> question was protected.  It is unquestioned,
> and this court has already held, that the
> matters Johnson alleges to have spoken out on
> are matters of public concern.

Doc. 30, p.5.  We have examined the cited evidentiary

references, even though the plaintiff's generalized

statements of fact and broad references to evidence sources

improperly avoids counsel's duty to identify particular

factual inferences and the evidentiary support for them.  The

plaintiff's counter statement of material facts, paragraphs

55-58, states:

> Admitted in part and Denied in part.  It
> is admitted that the conflict between lawyers
> and investigators in the WRO and Johnson's
> part in maintaining a respectful distance
> played an arguable role in Kondrad's
> retaliation.  But Michelle was guided and
> directed and responded to Hearthway.  She
> would never move or react without Hearthway's
> stimulating her.  And she did so because
> complaints that Johnson had about ethics
> (hiring practices, political activity in the
> office, and the deferential way certain cases
> were handled in a politically sensitive way)

had reached Hearthway and were communicated
to her not just by plaintiff, but by Kistler
and Michelle Kondrad and period in
plaintiff's experience.  Hearthway using her
direct connection to these lawyers, and
enlisted them in the effort to discredit and
pressure Johnson.

CMF paragraphs 55-58 contains no references to any

evidentiary source.


CMF paragraph 59 states:


Denied.  This paragraph has already been
responded to.  See exhibits P-7, 7a, and 7b.
And see P-14 and compare it with defendants
exhibit G.  This comparison shows the
duplicity of the defendants Hearthway and
Kondrad in the effort to harm plaintiff and
his career.


These record references invite the court to see exhibit P-7,

7a, 7b.  These exhibits are memoranda prepared by the

plaintiff in September of 2003.  We do not have presented to

us, and have no basis to supply *sua sponte*, some theory for

evidentiary use under the Federal Rules of Evidence and some

correlative probative inference.  The court is also referred

to P-14 and asked to compare it to defendant exhibit G.  P-14

is plaintiff's answers to interrogatories.  We have looked at

it and have compared it to defendant exhibit G, which is an

e-mail dated August 25, 2003 from defendant Santicola to

defendant Hearthway.  Without a statement from the party of

the inference(s) being proffered from these documents for
purposes of the summary judgment motion, and a showing that
the document can be construed to support such an inference in
a manner that comports with the Federal Rules of Evidence, we
will not undertake to extract "facts" from these documents in
some free form manner, as the plaintiff suggests that the
court should.  The plaintiff's own affidavit could have been
submitted to support the plaintiff's summary judgment factual
positions, but inexplicably was not.

Each defendant has demonstrated that he or she is
entitled to summary judgment because, as to each, the summary
judgment record demonstrates the absence of evidence to
establish an element of the plaintiff's claim.  As to
defendant Hearthway, there is shown to be no genuine dispute
that the statements made by plaintiff Johnson were not
substantive or motivating factors in the 2003 performance
evaluation rating of Johnson by Hearthway, and defendant
Hearthway is entitled to judgment as a matter of law.  As to
defendant Kistler, there is shown to be no genuine dispute
that plaintiff Johnson did not speak out on a matter of
public concern in relaying a message from a third person, and
defendant Kistler is entitled to judgment as a matter of law.
As to defendant Kondrad (Santicola), there is not a genuine

dispute that plaintiff Johnson's conduct in addressing questions to trial witnesses was not a matter of speaking out on a matter of public concern, and defendant Santicola is entitled to judgment as a matter of law.

The discovery period in this case expired on September 10, 2004. After discovery is completed, a party having the burden of proof on a claim must, as against a summary judgment argument that evidence as to a material element is lacking, demonstrate the existence of evidence to support the burden; *i.e.*, must show as to each element a quantum of evidence adequate to permit a reasonable jury to draw the inference propounded by the party with the burden. *Celotex Corp. v. Catrett, supra*. The plaintiff here has not shown the presence of all elements of the case as to any defendant, and the evidentiary support for each element, in a manner that shows the existence of a genuine dispute as to each and every material factual issue as to which the plaintiff has the burden of proof.

It is recommended that the defendants' motion for summary judgment be granted and that the case be closed.


_**/s/ J. Andrew Smyser**_
J. Andrew Smyser
Magistrate Judge

Dated:  March 18, 2005.